IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CLIFFORD J. CULGAN | ) | CASE NO. 1:11CV2698 |
| | ) | |
| Petitioner, | ) | JUDGE CARR |
| | ) | |
| v. | ) | MAGISTRATE JUDGE VECCHIARELLI |
| | ) | |
| WARDEN TIBBLES, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2).

Before the court is the petition of Clifford J. Culgan ("Culgan") for a writ of habeas

corpus filed pursuant to 28 U.S.C. § 2254 on December 13, 2011.  Culgan is in the

custody of the Ohio Department of Rehabilitation and Correction pursuant to journal

entry of sentence in the case of *State of Ohio vs. Culgan*, Case No. 01CR0372 (Medina

County 2002).  For the reasons set forth below, Culgan's petition should be dismissed

with prejudice.

I.

The state appellate court reviewing Culgan's conviction during his direct appeal

found the following facts to be relevant to his case:

{¶ 2} The victim in this case was a thirteen year-old girl who was temporarily
living in appellant's home with him and his family.  Evidence was presented that,
between May and July of 1999, approximately thirty to forty sexual encounters
took place between appellant and the victim at appellant's home.  During this
period of time, appellant provided the victim with alcohol and drugs, specifically
crack cocaine and ecstasy.  In one specific incident, once appellant had given
the victim cocaine and alcohol, he and another woman stripped her naked,

bound her by duct taping her wrists to her ankles, and made her lay on a pool table protected by plastic that was covered with baby oil.  Appellant then engaged in sexual intercourse with the victim, with the other woman's involvement, while he videotaped the incident.  Evidence was presented that appellant showed the videotape of this activity to several friends the next day.

{¶ 3} On May 10, 2002, appellant pled guilty to one count of corrupting another with drugs, in violation of R.C. 2925.02(A)(4), a second degree felony; one count of attempted pandering obscenity involving a minor, in violation of R.C. 2923.02 with R.C. 2907.32(A)(1) and (A)(3), a third degree felony; and two counts of unlawful sexual conduct with a minor, in violation of R.C. 2907.04, third degree felonies.  The trial court ordered a presentence investigation report be completed for appellant's sentencing hearing.

{¶ 4} Prior to appellant's sentencing hearing, appellant underwent a psychological examination, from which a psychological assessment was submitted to the court by psychologist Dr. Bendo.  On August 2, 2002, the trial court held both a sentencing hearing and a sexual predator determination hearing for appellant. After the presentation of evidence and testimony, along with the presentence investigation report and appellant's psychological assessment, the trial court adjudicated appellant a sexual predator pursuant to R.C. 2950.09.  The trial court also sentenced appellant to a prison term of seven years for corrupting another with drugs, with a concurrent three year term for one count of unlawful sexual conduct with a minor, both to run consecutively to concurrent terms of three years for the second count of unlawful sexual conduct with a minor and attempted pandering obscenity involving a minor.  Appellant's total prison term was ten years.  The final judgment of conviction was journalized on August 8, 2002.

*State v. Culgan*, 2003 WL 21221966, at *1 (Ohio App. May 28, 2003).

Culgan timely appealed his conviction and sentence to the state appellate court.

Culgan asserted three assignments of error in his appellate brief:

Assignment of Error One

The trial court erred in accepting a guilty plea without having determined that appellant understood the nature of the charges against him.

Assignment of Error Two

The trial court erred in sentencing appellant to consecutive terms without making the required findings on the record.

Assignment of Error Three

The trial court erred in finding appellant to be a sexual predator.

\*        \*        \*        \*        \*

Culgan later withdrew his first assignment of error.  On May 3, 2003, the state appellate court overruled Culgan's remaining assignments of error and affirmed the judgment of the trial court.

Culgan timely filed a notice of appeal in the Ohio Supreme Court.  In his memorandum in support of jurisdiction, Culgan asserted two propositions of law:

PROPOSITION OF LAW ONE:

A trial court may not impose consecutive sentences for multiple offenses without stating its reasons for imposing consecutive sentences on the record at the sentencing hearing.

PROPOSITION OF LAW TWO:

A defendant cannot be classified a sexual predator without evidence presented at the sexual predator hearing that establishes by clear and convincing evidence that the defendant is likely to engage in sexually oriented offenses in the future.

On November 5, 2003, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question.

On July 30, 2007, Culgan filed in the trial court a motion for re-sentencing. Culgan argued in his motion that the court's  judgment entry of sentence did not comply with Crim. R. 32(C) because it failed to include Culgan's plea, how the conviction was obtained, and whether a verdict was rendered. On August 1, 2007, the trial court denied Culgan's motion.

On October 26, 2007, Culgan filed in the state appellate court a petition for a writ of mandamus or procedendo, seeking an order compelling the trial court to issue an

3

entry of sentence that complied with Crim.R. 32(C). On November 20, 2007, the state appellate court *sua sponte* dismissed Culgan's petition for failure to demonstrate a clear right to the relief requested.

Culgan filed a timely notice of appeal of the state appellate court's decision.  In his memorandum in support of jurisdiction, Culgan asserted a single proposition of law:

> The failure of a writing filed as a "judgment" in a criminal case to set forth any element of Criminal Rule 32(C) renders such writing insufficient to constitute a "judgment or final order" required to establish subject matter jurisdiction in a Court of Appeals in an appeal attempted therefrom, and a Mandamus and/or Procedendo lie(s) to compel the Trial court and Trial Judge to resentence a defendant and cause to be journalized a valid judgment or final order in such case.

(Capitalization in the original).  On September 24, 2008, the Ohio Supreme Court reversed the state appellate court and granted writs of mandamus and procedendo to issue a sentence that complied with Ohio Crim. R. 32(C).

On October 7, 2008, the trial court entered a *nunc pro tunc* judgment entry re-sentencing Culgan.  On October 31, 2008, Culgan filed a notice of appeal in the state appellate court.  Culgan raised five assignments of error in his appellate brief:

Assignment of Error 1:

> The trial court exceeded its scope of authority in issuing the nunc pro tunc sentencing order, and the order is void; and the trial court erred to the prejudice of the appellant's substantial rights by sentencing the appellant outside of his presence, and by depriving him of his lawful and/or legal remedy.

Assignment of Error 2:

> The trial court erred to the substantial prejudice of the appellant by imposing consecutive terms without statutory authority, and/or in violation of constitutional and statutory law.

4

Assignment of Error 3:

> The trial court erred to the prejudice of the appellant's substantial rights by
> engaging in constitutionally prohibited judicial factfinding.

Assignment of Error 4:

> The trial court erred to the prejudice of the appellant's substantial rights by
> "re-imposing" unconstitutional sentences; application of the *Foster* remedy
> to the appellant who was charged prior to the *Foster* decision violates the
> appellant's constitutional rights.

Assignment of Error 5:

> The record does not contain sufficient evidence to establish by clear and
> convincing evidence the [sic] Culgan is a sexual predator; and the trial
> court erred to the prejudice of the appellant's substantial rights by first
> determining the evidence insufficient, then contradictorily declaring Culgan
> a sexual predator.

(Capitalization and punctuation altered from the original.)  On June 15, 2009, the state
appellate court vacated the judgment of the trial court and remanded the case for re-
sentencing.  The appellate court found that the trial court had erred in issuing a *nunc
pro tunc* sentencing entry to comply with the Supreme Court's mandate and, instead,
should have re-sentenced Culgan consistent with *State v. Foster*, 109 Ohio St. 3d 1,
845 N.E.2d 470 (2006).  This addressed Culgan's first assignment of error and made
his second, third, and fourth assignments of error moot.  With regard to Culgan's fifth
assignment of error, the appellate court found that the *nunc pro tunc* entry from which
Culgan appealed was not the judgment entry that classified Culgan as a sexual
predator.  The appellate court, therefore, dismissed the fifth assignment of error without
reaching its merits.

Culgan filed a timely notice of appeal of the appellate court's June 15, 2009
decision in the Ohio Supreme Court on July 27, 2009.  Culgan, however, subsequently
withdrew his appeal, and the Ohio Supreme Court dismissed the appeal on September
9, 2009.

The trial court conducted a sentencing hearing and again re-sentenced Culgan
on July 31, 2009.  The court sentenced Culgan to three years' imprisonment on each of

two counts of unlawful sexual conduct with a minor, those sentences to be served concurrently.  The court also sentenced Culgan to consecutive sentences of four years' imprisonment for corrupting another with drugs and three years' imprisonment for attempting pandering obscenity involving a minor, for a total prison term of 10 years. The court also imposed post-release control.

Culgan timely filed an appeal to the state appellate court.  Culgan raised five assignments of error in his appellate brief:

### Assignment of Error I

The trial court was without subject matter jurisdiction in this case as it was not invoked properly in the first instance as statutorily mandated.  The lack of subject matter jurisdiction renders all proceedings *void ab initio*, violating appellant's 5th, 6th, & 14th Amendment rights.

### Assignment of Error II

The trial court erred in imposing more than the minimum/concurrent sentences on appellant who allegedly committed the offenses prior to the announcement of *Foster*, violating the appellant's constitutional rights pursuant to the Fifth, Sixth, & Fourteenth Amendments of the U.S. Constitution & the Ex Post Facto provisions of both Ohio & U.S. Constitutions.

### Assignment of Error III

The trial court erred when it failed to include the sexual predator classification in the appellant's sentence & judgment of conviction that contained the sentence pursuant to RC § 2929.19(B)(4) & 2950.09(B)(4); & when it didn't address RC § 2929.19(B)(3)(f), as statutorily mandated, as applied to appellant when he allegedly committed the offense prior to S.B. 10, the Adam Walsh Act.

### Assignment of Error IV

Mr. Culgan received ineffective assistance of counsel when his attorney failed to move to dismiss the case for want of a speedy trial & instead coerced appellant to sign a speedy trial waiver, followed by a coercive involuntary plea bargain, in violation of the 6th Amend. of the U.S. Constitution & Article I, Section 10 of the Ohio Constitution.

### Assignment of Error V

The trial court erred in imposing sentence on Culgan due to the unreasonable

6

> delay in imposing a valid sentence, which resulted in loss of jurisdiction, violating Culgan's right to due process.

(Capitalization and punctuation altered from the original.)  On June 30, 2010, the state appellate court overruled assignments of error one, two, four, and five, overruled assignment of error three (relating to the sexual predator classification) in part, and found it was without jurisdiction to consider the remainder of assignment of error three. The appellate court then affirmed the judgment of the trial court.

Culgan timely filed a notice of appeal of the state appellate court's decision in the Ohio Supreme Court.  In his memorandum in support of jurisdiction, Culgan asserted five propositions of law:

First Proposition of Law:

> The trial court was without subject matter jurisdiction in this case as it was not invoked properly in the first instance as statutorily mandated.  The lack of subject matter jurisdiction renders all proceedings *void ab initio*, violating appellant's 5th, 6th, & 14th Amendment rights.

Second Proposition of Law:

> The trial court erred in imposing more than the minimum/concurrent sentences on the defendant-appellant who allegedly committed the offenses prior to the announcement of *Foster*, violating the defendant-appellant's constitutional rights pursuant to the 5th, 6th, & 14th Amendments to the U.S. Constitution and the Ex Post Facto provisions of both the Ohio & United States Constitutions.

Third Proposition of Law:

> The trial court erred when it failed to include the sexual predator classification in the defendant-appellant's sentence & judgment of conviction that contained the sentence pursuant to O.R.C. § 2929.19(B)(4) & 2950.09(B)(4); & when it didn't address O.R.C. § 2929.19(B)(3)(f), as statutorily mandated, as applied to defendant-appellant when he allegedly committed the offense prior to Senate Bill 10, the Adam Walsh Act.

7

Fourth Proposition of Law:

>Mr. Culgan received ineffective assistance of counsel when his attorney failed to move to dismiss the case for want of a speedy trial and instead coerced appellant to sign a speedy trial waiver, followed by a coercive involuntary plea bargain, in violation of the 6th Amendment of the U.S. Constitution & Article I, Section 10 of the Ohio Constitution.

Fifth Proposition of Law:

>The trial court erred in imposing sentence on Culgan due to the unreasonable delay in imposing a valid sentence, which resulted in loss of jurisdiction, violating Mr. Culgan's right to due process.

(Capitalization and punctuation altered from the original.)  On October 13. 2010, the Ohio Supreme Court denied Culgan leave to appeal and dismissed his appeal as not involving any substantial constitutional question.

On January 5, 2011, Culgan filed in the United States Supreme Court a petition for a writ of certiorari.  The Supreme Court denied the writ on March 21, 2011.

While Culgan was litigating his sentencing and re-sentencing, he was incarcerated in the Mansfield Correctional Institution in Richland County, Ohio.  On February 7, 2008, Culgan filed in the Richland County Court of Common Pleas a petition contesting the application of the Adam Walsh Act to his sentencing.  The Richland County common pleas court held the Adam Walsh Act to be unconstitutional.

The Richland County prosecutor appealed the decision of the court of common pleas.  On July 21, 2009, the state appellate court found that the common pleas court's ruling was in conflict with prior appellate court authority and reversed the lower court's decision.

Culgan timely filed a notice of appeal of the state appellate court's decision to the Ohio Supreme Court.  In his memorandum in support of jurisdiction, Culgan asserted

8

three propositions of law:

> First Proposition of Law:
>
>> Applying S.B. 10 to offenders whose crimes occurred before its effective date violates the Ex Post Facto Clause of the United States Constitution.
>
> Second Proposition of Law:
>
>> Applying S.B. 10 to offenders whose crimes occurred before its effective date violates the Retroactivity Clause of the Ohio Constitution and State & Federal Due Process Clause.
>
> Third Proposition of Law:
>
>> S.B. 10 impairs the obligation of contracts as protected by the Ohio and United States Constitutions, when it is applied to offenders who, under an agreement with the Prosecutor and before the Act's effective date, entered a plea of guilty.

The Ohio Supreme Court accepted Culgan's appeal and similar appeals for review, then it stayed a decision in those cases pending the outcome of *State v. Bodyke*, 126 Ohio St. 3d 266, 933 N.E.2d 753 (2010).  On June 3, 2010, the Ohio Supreme Court found that Ohio 2950.031 and 2925.032, which required the attorney general to reclassify according to the Adam Walsh Act sex offenders previously classified by Ohio judges according to Megan's Law, impermissibly violated the separation of powers doctrine. The court voided the reclassifications and reinstated the previously-imposed classifications and community-notification and registration orders.

On January 18, 2011, Culgan moved in the trial court to correct his jail time credit.  The trial court denied this motion on January 26, 2011.

On March 28, 2011, Culgan moved in the trial court to correct its "Judgment Entry and Notice of Duties to Register as an Offender of a Sexually Oriented Offense." The trial court denied this motion on April 5, 2011.

9

On June 10, 2011, Culgan moved in the trial court for judicial release.  The trial court denied this motion on August 3, 2011.

Culgan moved to terminate post-release control on March 21, 2012.  That motion is still pending in the trial court.

On December 13, 2011, Culgan filed in this court a petition for a federal writ of habeas corpus.  Culgan asserts five grounds for relief in his petition:

> GROUND ONE:  The trial court was without subject matter jurisdiction in this case as it was not invoked properly in the first instance as statutorily mandated. The lack of subject matter jurisdiction renders all proceedings void ab initio, violating the Defendant-Appellant's 5th, 6th, & 14th Amendment rights and denying his liberty interests established by R.C. 2935.09 regarding the mandatory procedures for obtaining an indictment.
>
> GROUND TWO:  The trial court erred in imposing more than the minimum/concurrent sentences on the Defendant-Appellant who allegedly committed the offenses prior to the announcement of <u>Foster</u>, violating the Defendant-Appellant's constitutional rights pursuant to the 5th, 6th, & 14th Amendments to the United States Constitution & the Ex Post Facto provisions of both the United States and Ohio Constitutions.
>
> GROUND THREE:  The trial court erred when it failed to include the sexual predator classification on the Defendant-Appellant's sentence & judgment of conviction that contained the sentence pursuant to R.C. 2929.19(B)(4) & 2950.09(B)(4) when it didn't address R.C.2929.19(B)(3)(f) as statutorily mandated, as applied to the Defendant-Appellant when he allegedly committed the offense prior to Senate Bill 10, the Adam Walsh Act.
>
> GROUND FOUR:  Mr. Culgan received ineffective assistance of counsel when his attorney failed to move to dismiss the case for want of a speedy trial and instead coerced the Defendant-Appellant to sign a speedy trial waiver, followed by [a] coercive involuntary plea bargain, in violation of the 6th Amendment to the U.S. Constitution & Article I, Section 10 of the Ohio Const.
>
> GROUND FIVE:  The trial court erred in imposing a sentence on Mr. Culgan due to the unreasonable delay in imposing a valid sentence, which resulted in a loss of jurisdiction, violating Mr. Culgan's right to due process.

(Capitalization and punctuation altered from the original.)  Respondent filed an

10

Answer/Return of Writ on May 2, 2012.  Doc. No. 5.  Culgan filed a traverse on July 6,

2012.  Doc. No. 8.  Thus, the petition is ready for decision.

II

*A.  Jurisdiction*

The Court of Common Pleas of Medina County, Ohio sentenced Culgan.  Culgan

filed his writ of habeas corpus in the Northern District of Ohio and raises claims

regarding the constitutionality of his incarceration under 28 U.S.C. § 2254.

> Writs of habeas corpus may be granted by the Supreme Court, any justice
> thereof, the district courts and any circuit judge within their respective
> jurisdictions. . . . Where an application for a writ of habeas corpus is made by a
> person in custody under the judgment and sentence of a State court of a State
> which contains two or more Federal judicial districts, the application may be filed
> in the district court for the district wherein such person is in custody or in the
> district court for the district within which the State court was held which convicted
> and sentenced him and each of such district courts shall have concurrent
> jurisdiction to entertain the application.

28 U.S.C. § 2241(a ) & (d).  Medina County is within this court's geographic jurisdiction.

The court notes that Culgan has been released from imprisonment, and it

addresses *sua sponte* the issue of subject matter jurisdiction.  Habeas relief is reserved

for persons "in custody in violation of the Constitution or laws or treaties of the United

States." 28 U.S.C. § 2241(c)(3).  Nevertheless, federal jurisdiction attaches on a

petition for a writ of habeas corpus when an petitioner in custody files for the writ, and

jurisdiction is not defeated solely by the release of the petitioner before completion of

proceedings on the application.  *Carafas v. LaValle*, 391 U.S. 234, 238 (1968).  When

a petitioner continues to suffer "collateral consequences" of an imposed sentence

sufficient to give the petitioner "a substantial stake in the judgment of conviction which

survives the satisfaction of the sentence imposed on him," the cause is not moot.  *Id.* at

11

237 (quoting *Fiswick v. United States*, 329 U.S. 211, 222).

Collateral consequences are sufficient to avoid mootness when they are severe, immediate (*i.e.*, not speculative), and not shared by the public generally.  *Hensley v. Municipal Court*, 411 U.S. 345, 351-52 (1973).  Collateral consequences sufficient to avoid mootness include restraints on liberty accompanying release on recognizance pending trial (*Id.*; *Justices of Boston Municipal Court v. Lydon*, 466 U.S. 294, 319-20 (1984)) and civil disabilities resulting from a felony conviction (*Carafas* at 237).  They do not include such nonstatutory consequences as diminshed employment prospects or possible effects on sentences in potential future criminal proceedings (*Lane v. Williams*, 455 U.S. 624, 632-33 (1982)).

Culgan's motion for release from post-release control is still pending in state court.  A petitioner who is free on post-release control is in the custody of the parole board, within the meaning of the habeas corpus statute, since post-release control "involves significant restraints on petitioner's liberty because of his conviction and sentence, which are in addition to those imposed by the State upon the public generally."  *Jones v. Cunningham*, 371 U.S. 236, 242 (1963).  Consequently, Culgan is "in custody" for purposes of establishing this court's jurisdiction.  This court has jurisdiction over Culgan's petition.

Respondent argues, however, that Culgan fails to raise a federal constitutional claim in his first, second, third, and fifth grounds for relief.

1.    *Jurisdiction and Culgan's first ground for relief*

Culgan contends in his first ground for relief that the trial court was without subject matter jurisdiction in his case because it failed properly to invoke jurisdiction as

12

mandated by Ohio statutes.  Respondent contends that this is an issue of state law not

cognizable in habeas proceedings.

In reviewing the decision of state courts, this court does not consider questions of

state law:

> "[F]ederal habeas corpus relief does not lie for errors of state law."  *Lewis v.
> Jeffers,* 497 U.S. 764 (1990);  see also *Pulley v. Harris,* 465 U.S. 37, 41 (1984). .
> . .  [I]t is not the province of a federal habeas court to reexamine state-court
> determinations on state-law questions.  In conducting habeas review, a federal
> court is limited to deciding whether a conviction violated the Constitution, laws, or
> treaties of the United States.

*Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Failure to raise a constitutional issue in

a ground for habeas relief deprives a court of subject matter jurisdiction over that claim.

*See Lambert v. Davis*, 449 F.3d 774, 778-9 (7th Cir. 2006) (citing 2254(a) and *Estelle*);

*Thomas v. Rowland*, 990 F.2d 1260 (9th Cir. 1993).

The Supreme Court has held that there is no federal constitutional right to an

indictment in state proceedings.  *Hutardo v. California*, 110 U.S. 516, 537-538 (1884).

The only federal requirement imposed on states with respect to the document initiating

charges against a defendant is that the defendant receive fair notice of the charges

levied.  *Alexander v. Louisiana*, 405 U.S. 625, 633 (1972).  Consequently, "[b]eyond

notice, a claimed deficiency in a state criminal indictment is not cognizable on federal

collateral review."  *Roe v. Baker*, 316 F.3d 557, 570 (6th Cir. 2002).

Culgan does not contend that he failed to receive notice of the charges against

him.  Rather, he alleges that the state trial court failed properly to invoke jurisdiction

pursuant to Ohio statutory law.  This is an issue of state law that is not cognizable in

federal habeas proceedings.  Thus, this court does not have subject matter jurisdiction

13

over Culgan's first ground for relief  For this reason, Culgan's first ground for relief should be dismissed.

> 2.    *Jurisdiction and Culgan's second ground for relief*

In his second ground for relief, Culgan argues that the trial court erred in imposing more than the minimum/concurrent sentences because he committed the offenses prior to the alteration in Ohio's sentencing laws announced in *State v. Foster*, 109 Ohio St. 3d 1, 845 N.E.2d 470 (2006).  According to Culgan, this violated rights protected by the Fifth, Sixth, and Fourteenth Amendments and the *Ex Post Facto* Clause of the United States Constitution.  Respondent contends that this is purely a matter of the application of Ohio's sentencing laws and fails to state a federal constitutional claim.

Respondent errs.  Culgan is not arguing that the trial court improperly applied Ohio law.  Rather, Culgan argues that by sentencing him according to a sentencing regimen that was not in effect at the time he committed his offense, Ohio violated his federal constitutional rights.  Whether Ohio properly applied the new sentencing regimen is beside the point.  As Culgan alleges a federal violation rather than the improper application of state law, his second ground for relief is within this court's subject matter jurisdiction.

> 3.    *Jurisdiction and Culgan's third ground for relief*

In his third ground for relief, Culgan contends that the trial court erred when it failed to include his classification as a sexual predator in the entry of sentence and related judgment of conviction.  Culgan asserts that this violated Ohio Rev. Code §§ 2929.19(B)(4) & 2950.09(B)(4).

14

Culgan fails to allege a federal constitutional violation in his third ground for relief. That is, Culgan does not allege that the allegedly erroneous application of state law was contrary to or an unreasonable application of a Supreme Court holding, as is required for federal habeas relief.  His argument exclusively alleges a violation of state law. Consequently, this court lacks subject matter jurisdiction over Culgan's third ground for relief, and that ground should be dismissed.

 4.  *Jurisdiction and Culgan's fifth ground for relief*

Culgan argues in his fifth ground for relief that the unreasonable delay in imposing a valid sentence on him deprived the sentencing court of jurisdiction over him. He cites Ohio Crim. R. 32(A) & (C) for this proposition.  This, Culgan contends, violated his right to due process.  Respondent replies that this ground for relief raises solely issues of state law and is non-cognizable in habeas proceedings.

The state appellate court hearing the corresponding claim on appeal determined that Ohio Crim R. 32 did not deprive the sentencing court of jurisdiction and that Culgan's sentence was valid.  *See State v. Culgan*, Slip Copy, 2010 WL 2624104, at *8-*9 (Ohio App. June 30, 2010).  Culgan's arguments in his traverse in support of this ground for relief exclusively cite state law.  Although Culgan asserts a due process violation, he presents no argument and no law of any kind in support of that assertion. Thus, Culgan gives this court no federal basis for providing habeas relief.  As this court is without authority to determine that the state appellate court erred on a question of state law or to provide habeas relief upon an error of state law, Culgan's fifth ground for relief is beyond this court's subject matter jurisdiction.  Consequently, this ground for relief should be dismissed.

15

For the reasons given above, Culgan's first, third, and fifth grounds for relief should be dismissed on jurisdictional grounds.

B.    *Evidentiary hearing*

The habeas corpus statute authorizes an evidentiary hearing in limited circumstances when the factual basis of a claim has not been adequately developed in state court proceedings.  28 U.S.C. § 2254(e)(2).  There is no need for an evidentiary hearing in the instant case.  All of Culgan's remaining claims involve legal issues that can be independently resolved without additional factual inquiry.

C.    *Exhaustion of state remedies*

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas corpus.  28 U.S.C. § 2254(b) and (c); *Castillo v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. Macklin*, 936 F.2d 790, 793 (6th Cir. 1991).  If any state procedures for relief remain available, the petitioner has not exhausted state remedies.  *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

A petitioner must fairly present any claims to the state courts in a constitutional context properly to exhaust state remedies.  *Anderson v. Harless*, 489 U.S. 4 (1982); *Picard v. Connor*, 404 U.S. 270 (1971); *Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6th Cir. 1989).  "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied."  *Picard*, 404 U.S. at 275; *see also Harris v. Reeves*, 794 F.2d 1168. 1174 (6th Cir. 1986).  The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims.  *Manning v.*

16

*Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).

The requirement that petitioners exhaust state remedies is a matter of comity

between the federal government and the states:

> The exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings. . . . Because "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation," federal courts apply the doctrine of comity, which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter."

*Rose v. Lundy*, 455 U.S. 509, 518 (1982) (quoting *Darr v. Burford*, 339 U.S. 200, 204

(1950)) (other citations omitted).  Because exhaustion is a matter of comity, a petition

containing unexhausted claims may be denied on the merits.  28 U.S.C. § 2254(b)(2).

Culgan has no state remedies available for his claims.  Because no state

remedies remain available to him, Culgan has exhausted state remedies.

D.    *Procedural default*

Reasons of federalism and comity generally bar federal habeas corpus review of

"contentions of federal law . . .  not resolved on the merits in the state proceeding due to

respondent's failure to raise them there as required by state procedure."  *Wainwright v.*

*Sykes*, 433 U.S. 72, 87 (1977).  When a petitioner

> has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  [note:  a failure to present to the

highest court deprives the federal court of jurisdiction on that issue.  *See  Jacobs v.*

17

*Mohr*, No. 99-3565, slip op. at 12 (6th Cir. August 2, 2001) (citing *McKeans v. Brigano*,

228 F.3d 674, 681 (6th Cir. 2000)).]

If the state argues that a petitioner has procedurally defaulted, the court must

conduct a four-step analysis to determine whether the petitioner has indeed defaulted

and, if so, whether the procedural default may be excused:

> First, the court must determine that there is a state procedural rule that is
> applicable to the petitioner's claim and that the petitioner failed to comply with the
> rule. . . . Second, the court must decide whether the state courts actually
> enforced the state procedural sanction.  . . . Third, the court must decide whether
> the state procedural forfeiture is an  "adequate and independent" state ground on
> which the state can rely to foreclose review of a federal constitutional claim. . . .
> This question generally will involve an examination of the legitimate state
> interests behind the procedural rule in light of the federal interest in considering
> federal claims. . . . [Fourth, if] the court determines that a state procedural rule
> was not complied with and that the rule was an adequate and independent state
> ground, then the petitioner must demonstrate . . . that there was "cause" for him
> to not follow the procedural rule and that he was actually prejudiced by the
> alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  A default will also be excused if

petitioner demonstrates that not excusing the default "will result in a fundamental

miscarriage of justice."  *Coleman*, 501 U.S. at 750.

Respondent contends that Culgan has defaulted his fourth ground for relief,

ineffective assistance of counsel.  Culgan argues in his fourth ground for relief that he

received ineffective assistance of counsel because his attorney failed to move to

dismiss his case pursuant to Ohio's speedy trial statute, coerced Culgan into signing a

waiver of a right to a speedy trial, and coerced Culgan into an involuntary plea bargain.

Respondent correctly notes that Culgan did not raise this claim during his first appeal.

Because Culgan did not raise his claim at his first opportunity to do so, Culgan has

defaulted his claim.

18

Although respondent is correct that Culgan defaulted this claim, the state appelalte court later waived that default by failing to note the default or enforce it. Culgan first raised this claim in his 2009 appeal of his re-sentencing. The state appellate court hearing the claim went to the merits of Culgan's claim without noting that the claim was untimely. *See State v. Culgan*, Slip Copy, 2010 WL 2624104, at *8-*9 (Ohio App. June 30, 2010). As the state appellate court did not enforce the default, the default is excused. This court shall examine the merits of Culgan's fourth ground for relief.

III.

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") altered the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus. As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A writ of habeas corpus may issue only if the state court's decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence. *Carey v. Musladin*, 549 U.S. ___, 127 S. Ct. 649, 653 (2006); *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000). Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the petitioner's conviction. *Carey*, 127 S. Ct., at 653.

19

Courts must give independent meaning to the phrases "contrary to" and "unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court.  Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court).  A decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at an opposite result. *Id.* at 405-06.   A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand.  *Doan v. Brigano*, 237 F.3d 722, 729-31 (6th Cir. 2001).  The court will examine Culgan's remaining grounds for relief using the deferential standard applied to state court rulings on the petitioner's claims.

A.      *Ground two:  The right to a jury trial, due process, and the Ex Post Facto Clause*

Culgan's second ground for relief asserts that the trial court violated his rights under the Fifth, Sixth, and Fourteenth Amendments and the *Ex Post Facto* Clause by sentencing him pursuant to *Foster*, since *Foster* was decided after he committed his crime.  Culgan does not specify which rights protected by the Fifth, Sixth, and Fourteenth Amendments were violated by his sentencing, and the court assumes that Culgan is asserting a violation of his right to a jury trial and of his right to due process.

20

1.  *Alleged violation of the Sixth Amendment right to trial by jury*

In *Blakely v. Washington*, 542 U.S. 296 (2004), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Supreme Court held that the Sixth Amendment's guarantee of the right to trial by jury requires that all facts necessary to a determination of guilt or to sentence enhancement be found by a jury.  Until 2006, Ohio sentencing statutes required sentencing a defendant to minimum and concurrent terms of incarceration unless the sentencing court determined that certain factors mandated longer or concurrent sentences.  Those factors, described at Ohio Rev. Code § 2929.12, required judicial factfinding of the sort later found to be unconstitutional by *Blakely* and *Apprendi*.

In *Foster*, 109 Ohio St. 3d 1, 845 N.E.2d 470, the Ohio Supreme Court found this portion of the Ohio sentencing statutes to be unconstitutional and severed it from the rest of the sentencing regime.  As a consequence of *Foster's* judicial reconstruction of the Ohio sentencing statutes, the Ohio Supreme Court directed sentencing courts as follows:

> Courts shall consider those portions of the sentencing code that are unaffected by today's decision and impose any sentence within the appropriate felony range. If an offender is sentenced to multiple prison terms, the court is not barred from requiring those terms to be served consecutively.

*Foster*, 109 Ohio St. 3d at 30, 845 N.E.2d at 499.

Culgan was sentenced to consecutive terms and less than minimum sentences. The state trial court entered Culgan's sentence after the Ohio Supreme Court's decision in *Foster*.  Because *Foster* allowed Ohio courts to sentence a defendant to any term within the appropriate felony range or to consecutive sentences without making any judicial findings of fact, it cannot be said that Culgan's sentence violated the holdings in

21

*Blakely* or *Apprendi*.  *Blakely* and *Apprendi* prohibit a judge from sentencing a defendant to any sentence greater than the maximum sentence that may be imposed without making judicial findings of fact.  Culgan does not allege that the court sentenced him to sentences outside the statutory sentencing range for the offenses to which he pleaded guilty.  Consequently, neither his sentences or the determination that they be served consecutively required any judicial factfinding.  Culgan's sentences, therefore, did not violate the holdings in *Blakely* or *Apprendi*.  Culgan's argument to the contrary is not well-taken.

      2.    *Alleged violation of the Ex Post Facto and Due Process clauses*

Culgan also argues that sentencing him to non-minimum and consecutive sentences under the Ohio sentencing statute re-fashioned by *Foster* violates the *Ex Post Facto* and Due Process clauses of the United States Constitution.  Respondent denies that Culgan's sentencing violates either clause.

Article I, § 10 of the United States Constitution provides that no state shall pass *ex post facto* laws. U.S. Const, Art. I, § 10.  The Constitution's bar against *ex post facto* laws, however, does not apply to courts:

> The *Ex Post Facto* Clause, by its own terms, does not apply to courts.  Extending the Clause to courts through the rubric of due process . . . would circumvent the clear constitutional text.  It also would evince too little regard for the important institutional and contextual differences between legislating, on the one hand, and common law decisionmaking, on the other.

*Rogers v. Tennessee,* 532 U.S. 451, 460 (2001).

Although the *Ex Post Facto* Clause does not apply to courts, "limitations on *ex post facto* judicial decisionmaking are inherent in the notion of due process."  *Id.* at 456.  In particular, the Supreme Court has found that a court may not unexpectedly and

22

indefensibly construe a criminal statute so as to criminalize conduct which had not been criminal prior to the court's new construction.  *See Bouie v. City of Columbia*, 378 U.S. 347 (1964).  The Supreme Court has explicitly declined, however, to apply all the protections of the *Ex Post Facto* Clause to courts by way of the due process clause.  *Id.* at 458-461.

In the present case, Culgan argues that because the events specified in the indictment occurred before the decision in *Foster*, applying *Foster's* judcially-reconstructed sentencing statute in re-sentencing Culgan violated his right to be free from *ex post facto* laws.  Culgan cites *Bouie v. City of Columbia*, 378 U.S. 347, 353 (1963), in support of the proposition that "an unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an *ex post facto* law, such as Art. I, § 10, of the Constitution forbids."  *See also Rogers v. Tennessee,* 532 U.S. 451, 459 (2001).

Culgan's argument is not well-taken for three reasons.  First, the judicial enlargement of a criminal statute in *Bouie* was very different from the alleged enlargement in *Foster*.  In *Bouie*, a South Carolina statute prohibited entry onto land after the posting of notice prohibiting such entry.  Defendants were arrested pursuant to that statute during a lunch counter sit-in for civil rights when they were ordered to leave after being notified that they were trespassing if they remained.  The defendants had not been given notice prohibiting their entry to the lunch counter prior to their entry.  Upon appeal, the South Carolina supreme court re-interpreted the relevant statute to prohibit remaining on a property after notice was given as well as entry onto the property.  The Supreme Court struck down the convictions and agreed with the appellants that South

23

Carolina had punished them for conduct that was not criminal at the time they committed it, thus violating the requirement of the due process clause that a criminal statute give fair warning of the conduct which it prohibits.  According to the Court, "If a judicial construction of a criminal statute is 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue,' it must not be given retroactive effect."  *Bouie*, 378 U.S. at 354 (quoting Hall, GENERAL PRINCIPLES OF CRIMINAL LAW (2d ed. 1960), at 61).

*Foster* differs considerably from *Bouie*.  *Foster* did not criminalize any conduct which had not been criminal prior to the decision.  Nor did *Foster* increase the maximum penalty that could be handed down for a crime.  Rather, *Foster* excised those portions of Ohio's sentencing statute that required judicial findings of fact before a court could sentence a defendant to more than a minimum sentence or to consecutive sentences.  *Bouie* does not prohibit this.

Second, Culgan's position is foreclosed in part by *Dobbert v. Florida*, 432 U.S. 282 (1977).  Culgan contends that Ohio may not sentence him pursuant to a statute that it modified after Culgan's criminal conduct because this fails to give him fair warning of his potential punishment.  As the Eleventh Circuit first pointed out in *United States v. Duncan*, 400 F.3d 1297 (11th Cir. 2006), *Dobbert* contradicts this proposition:

> Whether or not the old statute would in the future, withstand constitutional attack, it clearly indicated Florida's view of the severity of murder and of the degree of punishment which the legislature wished to impose upon murderers.  The statute was intended to provide maximum deterrence, and its existence on the statute books provided fair warning as to the degree of culpability to which the State ascribed to the act of murder.

*Duncan*, 400 F.3d at 1307-08.  Similarly, although Ohio's sentencing statutes at the time

24

of Culgan's criminal acts were unconstitutional, they nevertheless gave him fair notice of the acts that were prohibited and the degree of punishment which the Ohio legislature wished to impose on those who committed those acts. As the reinterpreted statute did not increase the maximum penalty to which Culgan was potentially subject, Culgan cannot say that the state failed to give fair warning of what was prohibited or of the potential penalties to which he would be subject if he committed those acts. *See United States v. Alston-Graves*, 435 F.3d 331, 343 (D.C. Cir. 2006); *United States v. Vaughn*, 430 F.3d 518, 524-25 (2d Cir. 2005); and *United States v. Lata*, 415 F.3d 107, 112 (1st Cir. 2005).

Third, Culgan' position is contradicted by *United States v. Booker*, 543 U.S. 220 (2005), and its progeny. In *Booker*, the Supreme Court confronted the constitutionality of a federal sentencing statute that resembled Ohio's insofar as it required specified judicial findings of fact for upward departures from a base sentence. The Court found that such mandatory factfinding violated the holding in *Apprendi,* and excised those portions of the statute requiring judicial factfinding before increasing a base sentence. The Supreme Court also allowed sentencing courts to engage in factfinding in determining sentences by using the previously-mandatory sentencing factors as guidelines that should be considered in sentencing. The Court required other federal courts to apply both parts of its holding--striking the mandatory findings on Sixth Amendment grounds and using the previously-mandatory factors as guidelines--to future cases because applying both holdings in combination best approximated the will of Congress in enacting sentencing reform. *Id.* at 249. Finally, the Court struck those sections of the statute requiring a relatively strict appellate review for departures from

mandatory sentencing guidelines and found that the resulting statute implied appellate review under a "reasonableness" standard.  *Id.* at 259-60.

When the Ohio Supreme Court determined that Ohio's sentencing statutes violated the holding in *Blakely*, it explicitly turned to *Booker* to cure the statutes' unconstitutionality.  *Foster*, 109 Ohio St. 3d at 26-27, 845 N.E.2d at 495-96.  Thus, the Ohio Supreme Court excised those portions of the statutes requiring judicial factfinding using certain factors before making upward departures from a base sentence or before sentencing to consecutive sentences.  *Id.*, 109 Ohio St. 3d at 28-30, 845 N.E.2d at 497-98.  It also instructed Ohio courts to use the factors enumerated in the statutes as guidelines in making sentencing determinations.  *Id.*, 109 Ohio St. 3d at 30, 845 N.E.2d at 498.  Sentencing courts were thus free to sentence defendants anywhere within the sentencing ranges set by the Ohio legislature for various crimes or to consecutive sentences, using the previously-mandatory factors as guidelines to determine where in the range a defendant should be sentenced.  The resulting statutes, according to the Ohio Supreme Court, best approximated the will of the legislature in passing the sentencing statutes while doing away with the statutes' unconstitutionality.[1]  *Id.*

Fourth, the Sixth Circuit has found that the imposition of consecutive sentences pursuant to *Foster* does not violate the *Ex Post Facto* or Due Process Clauses.  *Hooks v. Sheets*, 603 F.3d 316, 320-21 (6th Cir. 2010).  The court's reasoning in *Hooks*

---

[1]  Culgan argues that the Ohio Supreme Court's decision in *Foster* violated the principle of the separation of powers.  Such arguments about the structure of a state's governance are matters for the individual states, not for the federal government.  The only structural requirement imposed on the states by the Constitution is that each state shall have a republican form of government.  Art. IV, § 4.  All else, consistent with the federal rights guaranteed a state's citizens, is a matter for the individual states.

parallels the reasoning in *Dobbert* and supports the proposition that a non-minimum sentence imposed on such defendants pursuant to *Foster* also would not violate the *Ex Post Facto* or Due Process Clauses:

> Regardless of the court's determination in *Foster,* the maximum sentence to which Hooks was constitutionally subject contemplated consecutive sentences. Hooks would have the court calculate his maximum sentence as being imposed concurrently based solely on the facts found by a jury at the time of sentencing, because he argues that this calculation is mandated by *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).  However, *Apprendi* does not limit the calculation of Hooks's potential sentence to concurrent sentences when the judicial fact-finding here is allowed under [*Oregon v.*] *Ice* [, ___ U.S. ___, 129 S.Ct. 711 (2009)].  Thus, Hooks was initially and constitutionally subject to consecutive sentences according to the "guided discretion" of the court.  *See Foster,* 845 N.E.2d at 495.  Moreover, Hooks was always aware of the potential for consecutive sentences.  On re-sentencing post-*Foster* he remained subject to consecutive sentences within the discretion of the court.  Since Hooks was *always* subject to consecutive rather than concurrent sentences in the discretion of the trial court, his re-sentencing under *Foster* did not raise ex post facto or due process concerns.

*Hooks*, 603 F.3d at 321.

Culgan also cites *Cunningham v. California*, 549 U.S. 270 (2007), for the proposition that the sentencing scheme created by *Foster* violates the holding in *Apprendi* and *Blakely*.  *Cunningham* is distinguishable from the present case, however. Cunningham was sentenced under California's determinate sentencing law ("DSL"). The DSL presumed a middle range sentence, with judicial factfinding required before the court could impose a sentence in the lower or upper portions of the sentencing range.  Courts were to find relevant "circumstances in mitigation" or "circumstances in aggravation" justifying such departures by a preponderance of the evidence.  The California trial court sentenced Cunningham to a term in the upper portion of the sentencing range after finding circumstance in aggravation warranting such an upward

departure.

The California Supreme Court found that the DSL survived *Blakely*, *inter alia*, because it gave the courts ample discretion in identifying aggravating facts warranting an upward departure.  The United States Supreme Court disagreed.  It found that despite the DSL's differences from the sentencing scheme struck down in *Blakely*, the DSL still required judicial factfinding before a court could impose a sentence higher than a middle range sentence.  Consequently, the decision in *Blakely* prohibited DSL's system of judicial factfinding for upward departures.

The sentencing scheme fashioned by *Foster* does not suffer from the same infirmity that doomed California's DSL.  Ohio's post-*Foster* sentencing statutes require no judicial factfinding whatsoever before a court may sentence a defendant to any sentence within the appropriate sentencing range or sentence a defendant to serve multiple sentences consecutively.  Thus, *Blakely* is inapplicable, and *Cunningham* has no impact on Ohio's current sentencing statute.

A number of federal defendants have alleged that the federal sentencing statutes reshaped by *Booker* violate due process because they subject defendants to *ex post facto* laws.  Those challenges have been universally rejected.  *See United States v. Scroggins*, 411 F.3d 572, 575-78 (5th Cir. 2005); *United States v. Jamison*, 416 F.3d 538, 539 (7th Cir. 2005); *United States v. Dupas*, 417 F.3d 1064, 1068-69 (9th Cir. 2005); *United States v. Rines*, 419 F.3d 1104, 1106 (10th Cir. 2006); *Duncan*, 400 F.3d at 1306-08; and *Alston-Graves*, 435 F.3d at 343.  Culgan makes no argument that distinguishes in any relevant respect Ohio's revised sentencing statutes from the revised federal sentencing statutes upheld by the appellate courts.  Culgan' second

28

ground for relief, therefore, is without merit and should be denied.

B.      *Ground four:  Ineffective assistance of counsel:*

In his fourth ground for relief, Culgan argues that he received ineffective assistance of counsel because his attorney failed to move to dismiss his case pursuant to Ohio's speedy trial statute, coerced Culgan into signing a waiver of a right to a speedy trial, and coerced Culgan into an involuntary plea bargain.  Respondent replies that Culgan has waived these arguments by pleading guilty.

The issues that a petitioner who has pleaded guilty may raise to obtain habeas relief are extremely limited:

> A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence.  Accordingly, when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary.  If the answer is in the affirmative then the conviction and the plea, as a general rule, foreclose the collateral attack.

*United States v. Broce*, 488 U.S. 563, 569 (1989).  Generally, a guilty plea is knowing and voluntary if the defendant was competent to enter his plea and was aware of the consequences of pleading guilty.  *See Marshall v. Lonberger*, 459 U.S. 422, 436 (1983); *Godinez v. Moran*, 509 U.S. 389, 399 (1993).

Culgan makes two arguments in support of a contention that his guilty pleas was not knowing and voluntary.  First, he argues that the coerced waiver of his speedy trial rights was a cause of his pleading guilty.  According to Culgan, due to the trial counsel's ineffective assistance and coercion, Culgan waived his right to a speedy trial even though he could have filed a motion to dismiss the charges against him.  Consequently, Culgan concludes, if counsel had been effective and had not coerced him into waiving

29

his right to a speedy trial, Culgan would never have been in the position of having to plead guilty.

This argument is not well-taken.  If Culgan believed that his counsel had been ineffective or coercive with respect to waiver of the right to a speedy trial, Culgan's remedy was to bring this to the attention of the trial court and, if necessary, ask for new counsel.  But Culgan did not apprise the court that he was dissatisfied with counsel's performance.  Indeed, at his plea hearing, when asked if he was satisfied with counsel's representation, Culgan replied, "Absolutely."  Transcript of Proceedings, May 10, 2002 ("Tr."), Answer, Exh. 8, p. 6.  By choosing to plead guilty instead of seeking other remedies for counsel's alleged behavior, Culgan waived any claim of ineffective assistance of counsel prior to his guilty plea.  "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense . . . he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."  *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).  Thus, Culgan has waived all claims with respect to his waiver of his statutory right to a speedy trial.

Culgan also argues that his guilty plea was not knowing and voluntary because his counsel, Frank Pignatelli ("Pignatelli") surprised him at the last minute with a plea deal and "coerced" him into agreeing to the deal.  According to Culgan:

> Mr. Pignatelli . . . told the Petitioner that it would be the only offer, and if the Petitioner decided to pursue a trial, to expect thirty two (32) years of incarceration.  Mr. Pignatelli surprised the Petitioner and coercively persuaded the Petitioner to accept this plea deal.  When the Petitioner agreed, Pignatelli instructed the Petitioner that he should tell the court that no promises were made and that he freely and voluntarily wanted to plead guilty.

30

Traverse at 44 (spelling altered from the original).  According to Culgan, a lack of time to consider his decision and Pignatelli's alleged coercion precluded a knowing and voluntary guilty plea.

Culgan errs.  Culgan does not allege that his attorney's estimate of the sentence facing him if he failed to plead guilty was erroneous.  He merely implies that the alternative to pleading guilty was so distasteful that his consequent guilty plea was not voluntary.  But Informing a defendant that the alternative to pleading guilty is likely to be a much more lengthy sentence is not "coercion."  *See McDonald v. Burke*, 1998 WL 384554, *7 (6th Cir. June 17, 1998) (finding no coercion where defendant "felt only the inescapable pressures of the realities of his situation, not unconstitutional coercion.").  As the Sixth Circuit has observed, "Pressures are inevitable in the guilty-plea context, but they do not automatically form the basis for a collateral attack."  *Id.* (citing *United States v. Wilson,* 922 F.2d 1336, 1340-41 (7th Cir. 1991)).

Moreover, Culgan cannot argue now that he did not have sufficient time to consider the plea deal or that he was coerced into pleading guilty because he has disclaimed these arguments.  During his plea hearing, the court asked Culgan if he had been given sufficient time to consult with his attorney regarding the agreement, and Culgan answered that had.  Tr. at 5-6.  The court offered Culgan more time to consult with counsel if he needed it, and Culgan declined this offer.  *Id.*  After determining that Culgan was competent to plead, informing Culgan of his rights, and informing him of the consequences of pleading guilty, the court asked Culgan if anyone had threatened him to change his plea, and Culgan denied that anyone had.  Tr. at 7-12.  "[W]here the court has scrupulously followed the required procedure, 'the defendant is bound by his

31

statements in response to that court's inquiry.'"  *Baker v. United States*, 781 F.2d 85, 90 (1986) (quoting *Moore v. Estelle,* 526 F.2d 690, 596-97 (5th Cir. 1976).  Having denied that he needed more time to discuss his plea with his attorney and having denied threats, Culgan should not now be heard to allege a lack of time or allege that his guilty plea was coerced.

Culgan's factual allegations fail to show that his guilty plea was coerced, and Culgan's sworn statements to the trial court that he had sufficient time to consider his plea and that he had not received any threats preclude his contrary assertions in his habeas petition.  Consequently, Culgan fails to demonstrate that his guilty plea was not knowing and intelligent.  Because Culgan's plea was knowing and intelligent, Culgan's guilty plea waived his claim of ineffective assistance of counsel with respect to the waiver of his statutory right to a speedy trial.  For these reasons, Culgan's fourth ground for relief should be dismissed.

IV.

For the reasons given above, Culgan's first, third, and fifth grounds for relief should be dismissed as beyond this court's subject matter jurisdiction, and Culgan's second and fourth grounds for relief should be dismissed as without merit.  Thus, Culgan's petition should be dismissed with prejudice.


Date:  September 25, 2012                    */s/ Nancy A. Vecchiarelli*
                                             United States Magistrate Judge

**OBJECTIONS**

**Any objections to this Report and Recommendation must be filed with the**

32

Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.